## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**FOSTER TAYLOR**                                    **CIVIL ACTION**

**versus**                                              **NO. 07-3929**

**BURL CAIN, WARDEN**                        **SECTION: "R" (3)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Foster Taylor, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On June 5, 2002, he was convicted of armed robbery in violation of Louisiana law.[2]  On July 17, 2002, he was found to be a multiple offender and was sentenced as such to a term of forty-nine and one-half years imprisonment without benefit of parole, probation, or suspension of sentence.[3]  On March 30, 2004, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence.[4]  The Louisiana Supreme Court then denied his related writ application on March 24, 2005.[5]

After unsuccessfully seeking post-conviction relief in the state courts, petitioner filed the instant federal *habeas corpus* application.  In support of his application, he claims:

1.  Petitioner received ineffective assistance of counsel;

2.  There was insufficient evidence to support petitioner's conviction, and the trial court erred in failing to grant him a new trial on that basis;

3.  Petitioner's conviction should be vacated because he was arrested based solely on insufficient and uncorroborated

---

[2] State Rec., Vol. III of VI, transcript of June 5, 2002, p. 80; State Rec., Vol. II of VI, minute entry dated June 5, 2002; State Rec., Vol. II of VI, jury verdict form.

[3] State Rec., Vol. III of VI, transcript of July 17, 2002; State Rec., Vol. II of VI, minute entry dated July 17, 2002.

[4] State v. Taylor, 880 So.2d 831 (La. App. 5th Cir. 2004) (No. 03-KA-1272); State Rec., Vol. II of VI.

[5] State *ex rel.* Foster v. State, 896 So.2d 1025(La. 2005) (No. 2004-KH-1251); State Rec., Vol. II of VI.

information received from an anonymous, untested informant;

and

4.      Petitioner was wrongly found to be a second offender.

The state concedes that petitioner's federal application is timely and that he exhausted his state court remedies.[6]

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially

---

[6] Rec. Doc. 13, p. 4.

> indistinguishable facts.   The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.   The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1); Hill, 210 F.3d at 485.

Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

> At the trial, Tanya King, a night auditor at the Holiday Inn in Kenner, testified that on November 8, 2000, at approximately 12:00 or 12:30 a.m., she and Susan Cordes, another night auditor, were at the front desk. Ms. King was finishing a conversation with a bellman over a radio, and walked into the back office to hang up the radio.  As she turned around to go back up front with Ms. Cordes, she saw a man, later identified as Taylor, wearing a Halloween mask and carrying a gun.  Ms. King saw another man wearing a Halloween mask who was guarding the door. Ms. King identified State's Exhibit 3 as a photograph of the mask the gunman was wearing, and she described the gun as being slender, gray, and automatic.
>
> The gunman pointed the gun at Ms. King and told her to be quiet and that nothing would happen to her.  Grabbing the back of Ms. King's neck with his left hand, he put the gun under her chin. He pushed her to the front and told Ms. Cordes to get the money and to hurry up, giving her a red T-shirt in which to put the money.  After Ms. Cordes brought the money, he brought both Ms. King and Ms.

–  4  –

Cordes to the back room and told them to lie down on their faces, and the robbers left. Ms. King described the gunman as being tall and slender and the other man as being shorter and heavier.

Both women were terrified as they lay on the floor, thinking they were going to die. They subsequently heard someone punching in the code and were afraid that the gunmen had returned. When they turned around and saw John Riley, the bar manager, both women jumped up. Ms. Cordes grabbed the radio and called a deputy, and Ms. King called 911.

Ms. King testified that the back office was a secure area to which the public did not have access, and that the only way to gain entry to the area was to use an electronic code to open the door or to jump over the front counter. Ms. King testified that she was familiar with Derrin Smith, a maintenance worker at the hotel (who was also charged in the robbery), and that he had the code to get into the door so he could pick up and turn in keys.

Ms. Cordes testified at trial, and her testimony largely corroborated that of Ms. King. Additionally, Ms. Cordes testified that the robbers stole $250 that night. Further, she stated that she told Kenner Police Department Detective Michael Cunningham that she could not provide a description of the individuals who had robbed them because the two men were wearing masks, but that she could identify the mask and the clothes they were wearing. Ms. Cordes was shown a photographic lineup by the district attorney's office, but she was unable to recognize anybody's face. However, she testified that the man shown in the photograph, top row, third picture, in State's Exhibit 5, was wearing a dark jean jacket that looked exactly like the jacket the man with the gunman was wearing. This was Taylor's photo.

Det. Michael Cunningham testified that he investigated the armed robbery. Ms. King and Ms. Cordes explained to him that during the robbery, one man wore a ski mask, and that the other man wore a Star Wars type mask. Det. Cunningham testified that Det. Ed Derringer of the New Orleans Police Department was investigating the shooting death of a Jamal Relyveld, and that he had recovered evidence from that shooting which included a Star Wars type mask and a silver-colored automatic handgun.

Det. Cunningham showed Ms. Cordes a photograph of that Star Wars mask which Ms. Cordes positively identified as the mask that the gunman was wearing. Det. Derringer also gave Det. Cunningham the name of the defendant, Foster Taylor, and his nickname "Ketchup," in order to assist him with the Holiday Inn

armed robbery investigation.  Det. Cunningham learned that Mr. Relyveld and Taylor had the same address.

Det. Cunningham met with David Moore, the general manager of the Holiday Inn, who informed him that his employee, Derrin Smith, had requested bereavement leave as a result of Mr. Relyveld's death.  Mr. Moore provided Det. Cunningham with a copy of the bereavement leave and a copy of Mr. Relyveld's obituary notice.  Det. Cunningham learned that Mr. Relyveld and Derrin Smith were half-brothers.

Det. Cunningham testified that he met with a Matthew Smith during the investigation, and that Mr. Smith told him that he had knowledge regarding the Holiday Inn armed robbery.   Det. Cunningham took a taped statement from Matthew Smith and two statements from Derrin Smith, the second of which was admitted into evidence.

According to the witness, in his first statement of November 21, Derrin Smith stated that he had talked to Mr. Relyveld and Taylor about the possibility of a robbery, but that he did not think that they would go through with it.  In his second statement of February 15, 2001, admitted into evidence Derrin Smith stated that he knew Mr. Relyveld and Taylor were going to commit the armed robbery.

Derrin Smith told Det. Cunningham that he was on the telephone with his brother Mr. Relyveld and Taylor on November 7, after 5:00 p.m., approximately eight hours prior to the armed robbery. Both were asking him specific questions about the security of the hotel and the layout of the front office, and that he provided both of them with the access code to the door.  Mr. Relyveld knew which door to go into because he had been there.  On the day after the robbery, Mr. Relyveld was killed in another armed robbery.  Derrin Smith felt that if he had come forward previously, his brother may still have been alive.  There was no doubt in his mind that Mr. Relyveld and Taylor committed the robbery.  Following the second statement, Det. Cunningham arrested Derrin Smith as a principal to the armed robbery.

Matthew Smith testified that he knew Taylor and Mr. Relyveld, who were roommates, because he lived in the same apartment complex.  He explained that, in November of 2000, he had known them for approximately one month.  Mr. Smith had visited the two men almost every day because they had a television and he did not.  Det. Cunningham showed Mr. Smith a photographic lineup, and Mr. Smith identified number three as Taylor, who he knew as Torreyana Tates or "Ketchup."

When Matthew Smith went to the two men's apartment on November 9, Taylor and Mr. Relyveld were there. Taylor was counting penny wrappers and had money on the table. [Matthew] Smith asked Taylor where he had gotten the money, and Taylor said he had "hit a lick," which meant he had robbed someone. Taylor told Matthew Smith that he, Derrin Smith, and Mr. Relyveld had robbed the Holiday Inn where Derrin Smith worked.

Matthew Smith testified that he saw two guns in their apartment: one was a chrome-colored automatic 9 millimeter that was kept on top of the television in a box, and the other one was a .22 caliber revolver with a brown handle that was also kept on top of the television, but not in a box. Mr. Smith testified that the 9 millimeter gun belonged to Mr. Relyveld, and that the .22 caliber gun belonged to Taylor. Mr. Smith knew the gun belonged to Taylor because he saw Taylor carrying it around on his person.

After November 9, Taylor told Matthew Smith that he had hidden the gun in his back yard, and that he wanted [Matthew] Smith to go and get it. However, [Matthew] Smith did not go and get the gun, nor did he call the police because he did not want to get involved. [Matthew] Smith admitted that he and Taylor had had a fight approximately one week before the incident, and that he had tried to make up with Taylor, but that Taylor had held a grudge.

Mr. Moore, the general manager of the Holiday Inn, testified that, on November 8, 2000, Derrin Smith was employed by the hotel as a maintenance worker. Mr. Moore further testified that [Derrin] Smith gave the Human Resources Director a bereavement leave slip and an obituary notice in connection with the death of his brother, Jamal Relyveld, which Mr. Moore identified as State's Exhibits 1 and 2, respectively. Mr. Moore explained that, in order to collect for bereavement leave, the employee was required to fill out a personnel action form, or PAF, and produce a copy of the obituary from the Times-Picayune newspaper.

Mr. Moore explained that the area behind the front desk was known as the PBX office, that it was a secured area to which the public did not have access, and that in order to get through the door to gain access to the area, one had to punch in numbers on a keypunch number lock. He testified that [Derrin] Smith may have

had access to that back area, that he should not have had the access code, but that some maintenance personnel did.[7]

Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective. In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>See Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. <u>See Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

---

[7] <u>State v. Taylor</u>, 880 So.2d 831, 833-35 (La. App. 5th Cir. 2004) (No. 03-KA-1272); State Rec., Vol. II of VI.

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id</u>.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." <u>Crockett</u>, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. <u>Strickland</u>, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. <u>Moore v. Cockrell</u>, 313 F.3d 880, 881 (5th Cir. 2002).  Therefore, this Court must defer to the state court's decision rejecting such a claim unless petitioner shows that the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).

In rejecting petitioner's ineffective assistance of counsel claims, the state district court held:

> The defendant avers that his counsel prevented defendant
> from testifying in his own behalf.  The defendant alleges that he did

not testify due to "ill-advice" of his attorney.  He further avers that defense counsel never informed him that defendant's right to testify or not testify was his "ultimate" decision.  The defendant alleges that defense counsel failed to object to the trial court's "no inference" instruction to the jury.  He maintains that the trial court failed to inform the jury that the defendant had a right not to testify on his own behalf and that no inference could be drawn from his failure to testify.  He further alleges that defense counsel failed to request a "circumstantial evidence" jury instruction.  He claims that at no time did the trial judge instruct the jury on circumstantial evidence. Petitioner contends that had his attorney requested a special jury instruction then the jury would have found him not guilty since the State's case was weak.  Defendant further avers that defense counsel abandoned petitioner's theory of the case.  Defendant claims he told trial counsel about an alleged alibi witness.  He claims trial counsel never contacted nor issued a subpoenaed [sic] alibi witness.  He also claims that he failed to put forth any defense at all.  Had counsel presented an alibi defense in light of the State's case, there is a reasonable probability the jury would have returned a verdict of not guilty.

The Supreme Court of the United States established the standards for the claim of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  The test established by the Supreme Court provides that in order for a claim of ineffective assistance of counsel to prevail, the petitioner must show the counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and that the deficient performance prejudiced the defense in that the errors were so serious as to deprive petitioner of a fair trial.  Furthermore, the Court in Strickland, established that the performance inquiry into a counsel's ineffectiveness must be that his assistance was "reasonable considering all the circumstances".  Id. at 689.  The Court went on to emphasize the "countless" ways to provide effective assistance and also cautioned a counsel's action being challenged that might be considered "sound trial strategy".  Id.

In the instant case, none of defendant's claims seem to go beyond strategic choices made by counsel at the time of the defendant's trial.  A review of the record reveals that defense counsel filed numerous pre-trial motions.  Defense counsel prepared and argued at the Motion to Suppress Identification Hearing.  Defense counsel properly cross-examined the State's witnesses during the jury

trial.  Defense counsel filed numerous post-trial motions, including Motion for New Trial.

As to his claim that counsel refused to allow the defendant to testify, the Louisiana Supreme Court has provided a guideline to determine whether the defendant's right to testify was violated.  State v. Hampton, 818 So.2d 720 and 727.  Defendant has failed to show extraordinary circumstances existed that should alert the trial court to a conflict between attorney and client.  State v. Hampton at 727, citing, Passo-Paternina v. United States, 12 F.Supp.2d 231 (D.P.R. 1998).   Moreover, the Hampton Court stated that absent extraordinary circumstances, "the court should not inquire into a criminal defendant's right to testify".  Id.  The Court also added: "The court should assume, that a criminal defendant, by not 'attempting to take the stand,' has knowingly and voluntarily waived his right;" Id.

In addition, the court must consider whether the defendant waived his right to testify.  State v. Hampton, 818 So.2d 720 at 727. In particular, the defendant must rebut this presumption.  Id.  The defendant can do so by alleging specific facts, including an affidavit from his attorney or by demonstrating from the record, to show his attorney caused him to waive his right to testify.  Id.

In the instant matter, Mr. Taylor has presented no evidence that 1) extraordinary circumstances existed and 2) alleged no specific facts, either by affidavit or from the court record, that showed his attorney caused him to waive his right to testify.  Based on the foregoing, this Court properly assumed that defendant knowingly and voluntarily waived his right to testify.

A review of the court record, the defendant's claims are essentially with his counsel's decisions regarding techniques used at trial.  These are considered trial tactics for purposes of evaluating the performance of defendant's counsel.  Thus, defendant's claim must fail because his counsel's action at trial was considered trial tactics and under the Strickland test, the defendant has failed to meet the two-prong test.

Thus, the defendant's claim of ineffective assistance of counsel is without merit.[8]

---

[8] State Rec., Vol. II of VI, Order dated February 21, 2006, pp. 1-2.

Petitioner's related writ applications were likewise denied by the Louisiana Fifth Circuit Court of Appeal[9] and the Louisiana Supreme Court without separate reasons assigned.[10]  For the following reasons, this Court finds that petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

As to the claim that defense counsel refused to allow petitioner to testify, "it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."  Rock v. Arkansas, 483 U.S. 44, 49 (1987).  However, petitioner has offered no proof whatsoever that his counsel in fact prevented him from testifying.  He does not allege and the record does not suggest that he ever made known to the trial court that his counsel was refusing to allow him to testify despite his stated desire to do so.  Of course, the mere fact that petitioner failed to stand up in open court and insist on testifying should not be dispositive of the issue.  See United States v. Mullins, 315 F.3d 449, 455 (5th Cir. 2002); see also United States v. Araujo, 77 Fed. App'x 276 (5th Cir. 2003).  Nevertheless, the Court cannot ignore the fact that petitioner has never presented any evidence either to the state courts or to this Court to corroborate his allegations.  Without more, petitioner's bare allegations are insufficient to trigger either the granting of relief or further fact-finding by this Court.  As the United States Seventh Circuit Court

---

[9] State v. Taylor, No. 06-KH-228 (La. App. 5th Cir. Apr. 5, 2006); State Rec., Vol. II of VI.

[10]  State ex rel. Taylor v. State, 959 So.2d 491 (La. 2007) (No. 2006-KH-2447); State Rec., Vol. II of VI.

of Appeals noted in a case in which a petitioner alleged that he had been denied the right to testify

by his counsel:

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." ...
>
> ... [A] barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify – to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991); see also Richthofen v. Cain, Civ. Action

No. 05-5701, 2008 WL 630477, at *44-45 (E.D. La. Mar. 7, 2008); Curtis v. Cain, Civ. Action No.

06-1676, 2008 WL 482849, at *8-9 (E.D. La. Feb. 13, 2008); Baker v. Cain, Civ. Action No. 06-

2039, 2007 WL 2174959, at *10-11 (E.D. La. July 26, 2007); White v. Cain, Civ. Action No, 06-

1576, 2006 WL 3703240, at *4-5 (E.D. La. Dec. 11, 2006); Turcios v. Dretke, No. Civ. A. H-97-

0515, 2005 WL 3263918 (S.D. Tex. Nov. 29, 2005).  This Court finds that, in light of the complete

lack of evidentiary support for petitioner's contention, he has failed to meet his burden to establish

that he is entitled to relief.

To the extent that petitioner is arguing that counsel was ineffective in failing to

inform petitioner that he had an absolute right to testify, that claim is likewise meritless.  As an

initial matter, the Court notes that this was not petitioner's first trip to the courthouse.  The Court finds suspect any contention that petitioner, a habitual offender, was unaware of his right to testify. Nevertheless, in any event, petitioner has never presented any evidence whatsoever, such as an affidavit from his trial attorney, in support of the self-serving allegation that counsel failed to inform petitioner of his right to testify.  For that reason alone, the claim should be rejected.

To the extent that petitioner is alleging that his counsel was ineffective in failing to have him testify, the Court likewise rejects that claim.   A decision whether to put a criminal defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight."  United States v. Garcia, 762 F.2d 1222, 1226 (5th Cir. 1985); see also United States v. Mullins, 315 F.3d 449, 453 (5th Cir. 2002).  That is especially true under the facts of the instant case.  Here, according to the allegations in the petition, counsel was reluctant to have petitioner testify because evidence of his prior conviction would then have been admissible for impeachment purposes.[11]   Counsel cannot be considered ineffective in choosing to avoid that potentially prejudicial revelation.  Miranda v. Scott, No. 93-9133, 1994 WL 574719 (5th Cir. Oct. 12, 1994); Dowell v. Lensing, 805 F.Supp. 1335, 1361 n.32 (M.D. La. 1992), aff'd, 996 F.2d 306 (5th Cir. 1993).

Petitioner next claims that his counsel was ineffective in failing to request that the jury be instructed that petitioner had a right not to testify and that no adverse inference could be drawn from his failure to testify.  He similarly claims that his counsel was ineffective in failing to

---

[11]  Rec. Doc. 1, supporting memorandum, p. 5.

request a special charge concerning the jury's consideration of circumstantial evidence.  These claims fail for at least two reasons.

First, counsel's decisions regarding whether to request special jury charges is inherently one of trial strategy.  The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on matters of trial tactics through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689.  Such a presumption is particularly applicable where counsel may have determined that it was strategically preferable to forego a request for a special charge that could have the undesired effect of highlighting a matter potentially adverse to the defense.  See Buehl v. Vaughn, 166 F.3d 163, 170 (3rd Cir. 1999); United States v. Gregory, 74 F.3d 819 (7th Cir. 1996); Williams v. Armontrout, 912 F.2d 924, 934 (8th Cir. 1990); United States v. Williams, 166 F.Supp.2d 286, 294 (E.D. Pa. 2001).  Here, at least with regard to an instruction concerning petitioner's failure to the stand, counsel clearly could validly have decided that it was unwise to focus the jury's attention on that failure.  Further, in any event, "a conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it *permeates the entire trial with obvious unfairness."* St. Aubin v. Quarterman, 470 F.3d 1096, 1102 (5th Cir. 2006) (internal quotation marks and brackets omitted) (emphasis added), cert. denied, 127 S.Ct. 2133 (2007).  There is simply no basis for finding that counsel's failure to request the charges at issue affected the ultimate fairness of petitioner's trial or in any way influenced the outcome of the trial. See, e.g., United States v. Kaufman, 858 F.2d 994, 1006 (5th Cir.

1988) (Counsel's failure to request a jury instruction concerning petitioner's failure to testify is "hardly the type to survive the test of <u>Strickland v. Washington</u>, i.e, that his attorney was deficient and that the deficienc[y] altered the outcome of the case.").

Second, even if the Court were to ignore the foregoing considerations, petitioner simply has not met his burden to prove the facts upon which his claim is premised.  He has presented no evidence whatsoever, such as an affidavit from his trial attorney, that counsel failed to request such charges.  Further, there is no evidence that such instructions were not in fact given.[12] Petitioner's allegations alone are clearly insufficient to meet his evidentiary burden with respect to this claim.  See <u>Ross v. Estelle</u>, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

Petitioner next claims that his counsel was ineffective in failing to subpoena Nicole Meede as an alibi witness.  However, it is clear that "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative."  <u>Evans v. Cockrell</u>, 285 F.3d 370, 377 (5th Cir. 2002) (citing <u>Sayre v. Anderson</u>, 238 F.3d 631, 635-36 (5th Cir. 2001)).  Therefore, to show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have

---

[12] The jury instructions were not transcribed and are not otherwise contained within the state court record.

testified at trial.'"  Evans, 285 F.3d at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).  In the instant case, petitioner has provided no evidence whatsoever, such as an affidavit from Meede, showing that she could have provided petitioner with an alibi and would have testified to that fact at trial.  Accordingly, petitioner has utterly failed to meet his burden of proof with respect to this claim, and the claim therefore fails.

      Moreover, even if Meede would have agreed to testify, counsel still should not be considered ineffective for failing to call her.  There is a strong presumption that counsel's decision regarding whether to call a witness is one of trial strategy.  Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984); see also Green v. Cockrell, No. 02-20650, 2003 WL 21145722 , at *2 (5th Cir. Apr. 29, 2003) ("A strategic or tactical decision not to call particular witnesses does not constitute ineffective assistance."); Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978) ("[C]omplaints based upon uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.").  As previously noted, the United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such trial tactics through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.  That presumption is particularly applicable here. As the United States First Circuit Court of Appeals has noted:

> The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony.  The witness may not testify as anticipated or the witness's demeanor or character may impress the jury

> unfavorably and taint the jury's perceptions of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused.  Where the prosecution's case is less than compelling ..., the risk of "rocking the boat" may warrant a decision by trial counsel to forego the presentation of further defense testimony, even favorable testimony.  <u>Johnson v. Lockhart</u>, 921 F.2d 796, 800 (8th Cir.1990) ("since the government has the burden of proving guilt beyond a reasonable doubt, it may not be necessary for the defense to introduce evidence to meet the constitutional requirement of effective representation"); <u>cf.</u> [<u>United States v.</u> <u>Natanel</u>, 938 F.2d [302, 310 (1st Cir. 1991)] ("additional arguments could only impair [a] client's seemingly secure position....  In litigation, as in life, there is much to be said for such maxims as 'if it ain't broke, don't fix it,' and 'quit when you're ahead'").

<u>Lema v. United States</u>, 987 F.2d 48, 54 (1st Cir. 1993) (citations omitted).  The court continued:

> Reasonably competent trial counsel might well have determined that the best prospect for acquittal lay in discrediting the government's witnesses, rather than presenting additional testimony which could appear to legitimate the government's case or raise questions about the defense not previously suggested by the government's evidence.

<u>Id</u>. Without more, such as evidence that Meede could have provided a viable alibi and would have been a reasonably credible and untainted witness, the Court cannot find that counsel was deficient in opting not to call her and instead to simply try to discredit the state's case.

Petitioner next claims that counsel was ineffective in abandoning an alibi defense after saying in his opening statement that such a defense would be presented at trial.  First, petitioner has provided no evidence whatsoever than any such representation was made during opening statements.[13]  Second, he has likewise failed to establish that any evidence existed on which a viable alibi defense could have been mounted.  In his federal application, petitioner suggests only that he

---

[13]  The opening statements were not transcribed.

was with Meede at the time the crime was committed.[14]  However, petitioner could not safely take

the stand to testify regarding the alibi due to his own criminal record, he has presented no evidence

that Meede would in fact have corroborated the alibi, and there is no other evidence corroborating

the alibi.  Where, as here, a Court has before it nothing more than a petitioner's own bald and

inherently suspect assertions that he was with someone else at the time of the crime, there is simply

no basis for a finding that defense counsel wrongly abandoned a viable alibi defense.  Therefore,

petitioner has not established that he was prejudiced by his counsel's failure to pursue such a

defense.

In light of the foregoing, it is evident that petitioner has not demonstrated that the

state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved

an unreasonable application of, clearly established federal law, as determined by the Supreme Court

of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court likewise

rejects those claims.

<u>Sufficiency of the Evidence/Denial of New Trial</u>

Petitioner next claims that there was insufficient evidence to support his conviction

and that the trial court erred in failing to grant him a new trial on that basis.  The Louisiana Fifth

Circuit Court of Appeal rejected those claims on direct appeal, holding:

> Taylor alleges on appeal that the trial court erred in failing to
> grant the defense's motion for a new trial because there was
> insufficient evidence to support the conviction as to the identity of
> the perpetrator.  He contends that, considering the fact that Matthew
> Smith and Taylor had a fight the week before the incident, and that

---

[14]  Rec. Doc. 1, supporting memorandum, p. 15.

Taylor had held a grudge against Matthew Smith, that Matthew Smith had every reason to lie. He urges that Matthew Smith had no credibility regarding either their relationship or the likelihood that Taylor would admit committing the robbery to him. Thus, Taylor alleges that the guilty verdict was contrary to the law and evidence.

The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[FN1] A review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.[FN2] A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt.[FN3]

> FN1. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

> FN2. Id.

> FN3. State v. Joseph, 01-1211 (La.App. 5 Cir. 4/10/02), 817 So.2d 174.

Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[FN4] When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438.

> FN4. State v. Shapiro, 431 So.2d 372, 378 (La. 1982).

LSA-R.S. 14:64 defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."

In addition to proving the statutory elements of the charged offense at trial, the state is required to prove the identity of the perpetrator.[FN5] Where the key issue is identification the state is

– 20 –

required to negate any reasonable probability of misidentification in order to carry its burden of proof.[FN6]

> FN5. State v. Vasquez, 98-898 (La.App. 5 Cir. 2/10/99), 729 So.2d 65, 69.

> FN6. Id.

In the instant case, Taylor does not contend that the state failed to establish the elements of the crime of armed robbery. Rather, he alleges that there was insufficient evidence to conclude that he was the perpetrator of the armed robbery.

Derrin Smith, a Holiday Inn employee, admitted in his statement that he knew Taylor and Jamal Relyveld were going to commit the armed robbery at the Holiday Inn, and told Det. Cunningham that approximately eight hours before the robbery, he gave Taylor and Mr. Relyveld information regarding the security of the hotel, the layout of the front office, and the access code to the door.

Matthew Smith testified that he went to the apartment shared by Taylor and Mr. Relyveld on the day after the robbery and saw Taylor counting penny wrappers.  He testified that Taylor told him that he and Mr. Relyveld had robbed the Holiday Inn where Derrin Smith worked, and that he, Taylor, had hidden the gun that was used in the robbery in the backyard.

Ms. Cordes testified that Taylor was wearing a mask during the robbery, and she positively identified a photograph of the mask, which had been obtained from an investigation involving the shooting death of Mr. Relyveld, who was the half-brother of Derrin Smith.

The state's case against Taylor rested to a great extent on the testimonies of both Derrin and Matthew Smith.

The reviewing court will not assess the credibility of witnesses, nor re-weigh evidence.[FN7]  The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness.[FN8]   In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for the requisite factual finding.[FN9]

> FN7. <u>State v. Rosiere</u>, 488 So.2d 965, 968 (La. 1986); <u>State v. Ellwood</u>, 00-1232 (La.App. 5 Cir. 2/28/01), 783 So.2d 423, 427.
>
> FN8.  <u>State v. Rivers</u>, 01-1251 (La.App. 5 Cir. 4/10/02), 817 So.2d 216, 219, <u>writ denied</u>, 02-1156 (La. 11/22/02), 829 So.2d 1035.
>
> FN9. <u>Id</u>.
>
> In the instant case, the jury obviously found Matthew Smith's testimony credible.  Further, there was no internal contradiction or irreconcilable conflict between the physical evidence and Matthew Smith's testimony.  There was evidence other than Mr. Smith's testimony, outlined hereinabove, which was used at trial.  Viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt.  This assignment of error is without merit.[15]

The Louisiana Supreme Court denied petitioner's related writ application without assigning separate reasons.[16]

The United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

---

[15]  <u>State v. Taylor</u>, 880 So.2d at 835-37; State Rec., Vol. II of VI.

[16]  <u>State *ex rel.* Taylor v. State</u>, 896 So.2d 1025(La. 2005) (No. 2004-KH-1251); State Rec., Vol. II of VI.

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Jackson, 443 U.S. at 319). "The Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan, 271 F.3d at 193 (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added).

A sufficiency of the evidence argument presents a mixed question of law and fact. Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). Therefore, this Court must defer to the state court's decision rejecting petitioner's claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

For the reasons noted by the Louisiana Fifth Circuit Court of Appeal, any rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, easily could have found that the evidence was sufficient to convict petitioner of the crime charged. Further, as is clear from the passage quoted from the state court opinion, the court expressly employed the correct standard of law, i.e. the Jackson standard, in reviewing petitioner's claim, and the court applied that standard in a reasonable manner. Accordingly, under the AEDPA's deferential standard, this Court must likewise reject petitioner's claim challenging the sufficiency of the evidence.

In light of the fact that there was sufficient evidence to support petitioner's conviction, the Court necessarily also rejects petitioner's related claim that the trial court erred in denying the motion for a new trial based on the purported insufficiency of the evidence.

<u>False Arrest</u>

Petitioner next claims that his conviction should be vacated because he was arrested based solely on insufficient and uncorroborated information received from an anonymous, untested informant.  That claim is based on Detective Michael Cunningham's testimony that one lead in his investigation originated from information given by an informant to Detective Ed Derringer during his investigation into the unrelated murder of Jamal Reyveld.  From that fact, petitioner surmises that his arrest was based solely on that information.  He then opines that the information from the informant was insufficient to establish probable cause for the arrest and, therefore, his resulting conviction is invalid.  Petitioner's claim fails for at least two reasons.

First, even if there had been insufficient probable cause of petitioner's arrest, that alone would not warrant federal *habeas corpus* relief.  It is clear that "illegal arrest or detention does not void a subsequent conviction."  <u>Gerstein v. Pugh</u>, 420 U.S. 103, 119 (1975).  Where, as here, no confession or evidence resulted from the allegedly false arrest, no federal claim is stated.  <u>Davis v. United States</u>, 424 F.2d 1061, 1063 (5th Cir. 1970); <u>see also</u> <u>Johnson v. Beto</u>, 466 F.2d 528, 529 (5th Cir. 1972); <u>Green v. United States</u>, 460 F.2d 317, 318 (5th Cir. 1972).

Second, in any event, petitioner's claim that there was no probable cause for his arrest is unsupported by the facts.  Contrary to petitioner's implicit assertion, Cunningham did *not* testify that he arrested petitioner based solely on Derringer's information; rather, Cunningham testified only that it was *one* of his leads.[17]  Further, the arrest report and probable cause affidavit prepared

---

[17]  State Rec., Vol. III of IV, transcript of June 5, 2002, pp. 51-55.

by Cunningham show that the arrest was in fact based on much more substantial information, including but not limited to Derrin Smith's statement.  In that affidavit, Cunningham stated:

> On 11/8/00 an armed robbery occurred at the Holiday Inn hotel in Kenner.  During the robbery two black males, one of whom was wearing a Star Wars mask, and armed with handguns entered the hotel front office through a locked office door by entering an access code on the door keypad.  The black males robbed the hotel cashiers of currency from the hotel cash register.  It was later learned that Jamal Relyveld, while wearing a Star Wars mask, was shot and killed during an armed robbery in New Orleans, and that Jamal had a half brother who worked at the Holiday Inn in Kenner.  Upon interviewing the half brother, he advised that only hours prior to the armed robbery Jamal and the defendant questioned him about operations of the hotel, with specific questions concerning locations of security cameras and if security guards worked at the hotel.  The half brother advised that during the course of their conversation he provided the defendant and Jamal with the code to the front office.  Approximately seven hours after the half brother provided the information to Jamal and the defendant, the Holiday Inn was robbed.  Jamal and the defendant both matched the physical description of the suspects and lived together.[18]

Accordingly, petitioner's contention that he was arrested based solely on the informant's information is simply wrong.  Further, based on the foregoing, it is evident that there was ample probable cause to support petitioner's arrest.

<u>Multiple Offender Adjudication</u>

Petitioner's final claim is that he was wrongly found to be a second offender.  The state argues that petitioner's claim is procedurally barred.  The state is correct.

Regarding procedural bars, the United States Fifth Circuit Court of Appeals has held:

---

[18]  State Rec., Vol. III of VI, Arrest Report and Probable Cause Affidavit.

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

It is clear that petitioner's claim was rejected by the state courts based on independent and adequate state grounds.  When petitioner first asserted the instant claim in the state post-conviction proceedings, the state district court rejected the claim, holding:

> [T]he defendant claims the trial court erred in finding him a second felony offender.  The defendant asserts a claim which is not listed under LA C.Cr.P. Art. 930.3 as an appropriate ground to file in a post-conviction relief application.  The defendant's proper remedy was to file a writ application within thirty (30) days of the sentencing or an appeal within five (5) days of the rendition of the judgement not a post conviction relief.  La.C.Cr.P. Art. 930.3 and State ex rel Melinie v. State, 665 So.2d 1172 (La. 1996).[19]

Without separate reasons assigned, the Louisiana Fifth Circuit Court of Appeal and the Louisiana Supreme Court then rejected petitioner's related writ applications.[20]  Federal courts have long held that article 930.3 and the Melinie decision constitute independent and adequate grounds to support the application of a procedural bar.  See, e.g., Hull v. Stalder, No. 99-31199, 2000 WL 1598016 (5th

---

[19]  State Rec., Vol. II of VI, Order dated February 21, 2006, p. 3.

[20]  State v. Taylor, No. 06-KH-228 (La. App. 5th Cir. Apr. 5, 2006); State ex rel. Taylor v. State, 959 So.2d 491 (La. 2007) (No. 2006-KH-2447); State Rec., Vol. II of VI.

Cir. Sept. 28, 2000); <u>Madina v. Cain</u>, Civ. Action No. 05-2126, 2006 WL 2726506, at *3 (E.D. La. Sept. 20, 2006); <u>Johnson v. Andrews</u>, Civ. Action No. 05-0413, 2006 WL 2294864, at *4 (E.D. La. Aug. 4, 2006); <u>Williams v. Miller</u>, Civ. Action No. 05-0086, 2006 WL 2087867, at *9 (E.D. La. July 24, 2006); <u>Dedmond v. Cain</u>, Civ. Action No. 03-3375, 2005 WL 1578086, at *8 (E.D. La. June 30, 2005); <u>Leonard v. Hubert</u>, Civ. Action No. 00-0511, 2001 WL 333123, at *7 (E.D. La. Apr. 4, 2001).

When, as here, the state court has rejected a petitioner's claims based on independent and adequate state procedural rules, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." <u>Hughes v. Johnson</u>, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner can demonstrate neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." <u>Johnson v. Puckett</u>, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. <u>Romero v. Collins</u>, 961 F.2d 1181, 1183 (5th Cir. 1992). Petitioner has not shown cause for his default. "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." <u>Martin v. Maxey</u>, 98 F.3d 844, 849 (5th Cir. 1996).

Without a showing of cause and prejudice, a petitioner's defaulted claims are procedurally barred unless the application of the bar will result in a fundamental miscarriage of justice.  The fundamental miscarriage of justice exception is limited to claims of actual innocence.  See Bagwell v. Dretke, 372 F.3d 748, 757 (5th Cir. 2004); Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998).  However, it is unclear to what extent, if any, the "actual innocence" exception is available when the defaulted claim relates merely to an alleged sentencing error in a noncapital proceeding.

In Haley v. Cockrell, 306 F.3d 257 (5th Cir. 2002), the United States Fifth Circuit Court of Appeals, after noting that a split exists among the circuits on that issue, held that the "actual innocence" exception is available to petitioners in noncapital proceedings who claim they were erroneously sentenced as habitual or multiple offenders.  Id. at 265-66.  However, the Haley court held that, when barred claims dealt with such alleged sentencing errors, the "actual innocence" requirement is met only when the petitioner shows that "he would have not been legally eligible for the sentence he received."  Id. at 264. The Supreme Court subsequently vacated the Haley decision on other grounds and remanded the case to the Fifth Circuit.  Dretke v. Haley, 541 U.S. 386 (2004). In so doing, the Supreme Court declined to answer the question of whether the "actual innocence" exception applies to noncapital sentencing errors.  Id. at 393-94.

This Court does not attempt to answer the question left open by the Supreme Court. Nevertheless, even if the "actual innocence" exception is available to defaulted claims regarding noncapital sentencing errors, petitioner has failed to establish that he was legally ineligible for the

habitual offender sentence he received.  Thus, he has not demonstrated that any miscarriage of justice will result from application of the procedural bar.

Accordingly, for the foregoing reasons, the undersigned has no hesitation in finding that petitioner's claim challenging his multiple offender adjudication is in fact procedurally barred in this federal proceeding.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Foster Taylor be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ninth day of May, 2008.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**